

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KEVIN MURDOCK<br>    Plaintiff,<br><br>v.<br><br>THE CITY OF CHICAGO, OFFICER<br>R. LaCOSTE, and OFFICER D.<br>RICHARDSON,<br>    Defendants. | )<br>)   No. 05 C 3610<br>)<br>)   Magistrate Judge<br>)   Arlander Keys<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION AND ORDER

Currently before the Court is Defendants' Motion for Summary Judgment. Plaintiff sued Defendants for false arrest under § 1983 and Illinois state law. Defendants argue that the undisputed evidence clearly establishes that they had probable cause to arrest Mr. Murdock, and that, in the alternative, they are immune from liability in this suit. The Court agrees that there is no genuine issue of fact regarding the existence of probable cause, and grants Defendants' Motion for Summary Judgment.

## BACKGROUND FACTS

On January 31, 2005, 13 year old Joseph Raggs left Morgan Park High School[1] to visit his mother, a teacher at Percy Julian

---

[1] Joseph was enrolled in Morgan Park High School's 7th and 8th grade program.

High School ("Julian"). On his way to Julian, Joseph was robbed
and nearly jumped by a small group of unknown teenage boys.
After the incident, Joseph went to Julian and told his mother
what had happened. Ms. Raggs took Joseph to the Chicago Police
Department's Office inside of Julian, to report the theft. Ms.
Raggs made clear that she wanted the boys who robbed her son
arrested.

When the Raggs' arrived, Officer LaCoste, who had been
assigned to Julian since 2003, filled out the police report[2].
Joseph told Officer LaCoste that he was approached by a Julian
student seeking change for a five dollar bill. When Joseph gave
him five singles, the boy pretended to give Joseph a five dollar
bill in exchange - snatching the bill out of Joseph's hand.
Joseph then stated that at least one and perhaps two other boys
with the student were following him, and that he was afraid the
boys were going to jump him. Joseph stated that another one of
the boys asked him for his money, and that he threw a dollar at
the boy and ran. Officer LaCoste's police report indicates that
Joseph was robbed by at least two individuals, and documents
Joseph's description of the offenders.

---

[2] Although Officer LaCoste filled out the police report,
Officer Richardson testified that he was present when Joseph and
him mother explained that Joseph had been approached by three
boys, that one of the boys stole his five single dollar bills,
and that before he could put his wallet away, another boy took
five dollars from his wallet and threw it to the ground.   D.
Richardson Dep. At 37.

2

Later, Ms. Raggs and Joseph went to the office of Derek Jordan, Julian's Vice Principal, to report the incident. Joseph testified that, while in Mr. Jordan's office, he identified Julian student Robert Gray from a Julian yearbook. J. Raggs' Dep. at 19. His mother, however, testified that Joseph identified Astin Young as having been present during the robbery (V. Raggs' Dep. at 19). Ms. Raggs' statement is consistent with Mr. Jordan's testimony that, following Joseph's identification from the Julian yearbook, he questioned Astin Young[3] about the robbery. Notably, neither Ms. Raggs nor Mr Jordan dispute Joseph's testimony that he identified Robert Gray as the boy who took his five single dollar bills.

Following Joseph's identification, Mr. Jordan interrogated Astin Young in his office. Mr. Jordan testified that Astin stated that he did not want to be a "snitch", but indicated that another Julian student, Kevin Murdock, was involved in the incident. D. Jordan Dep. at 47. After Astin identified Kevin Murdock, Mr. Jordan and Joseph went into the hallway to look for Kevin. When Kevin walked by, Joseph identified Kevin as being the person who stole his money, and Mr. Jordan began questioning Kevin. D. Jordan Dep. at 53. Mr. Jordan[4] explained that, when

_____

[3] Astin Young is referred to as both "Astin" and "Asten" in the Record.

[4] Mr. Jordan's testimony is consistent with Ms. Raggs' testimony that, after leaving Mr. Jordan's office and walking in

3

he approached Kevin about the incident, Kevin became aggressive and started shouting and cursing. *Id.* Officer Richardson testified that he heard a commotion in the hallway, and saw Kevin Murdock being loud and "extremely vulgar" toward Mr. Jordan[5]. *Id.* Officer Richardson "took control of the situation," handcuffed Kevin Murdock, and took him out of the building. *Id.* at 67. Officer Richardson cannot recall specifically who told him that Kevin Murdock had robbed Joseph.

Kevin Murdock was taken to the area 22 police station. Ms. Raggs and Joseph also went to the police station, where Joseph either recanted his statement that Kevin had robbed him, or clarified that Kevin was merely a witness to the robbery and that Kevin had not committed a crime. After spending nearly three hours at the police station, Kevin was released that same day, and subsequently filed this suit.

---

the hallway, Kevin walked by and Joseph identified Kevin, stating "that's him, that's him." V. Raggs' Dep. at 31. Ms. Raggs testified that Kevin started screaming and yelling, and indicated that Officer Richardson was present at this time. *Id.* And while Joseph denies ever specifically stating to the police officers that "Kevin Murdock stole five dollars from me," he admits that, when he saw Kevin in the hallway, he said that's him, or "words to that effect." J. Raggs' Dep. at 47.

[5] In the meantime, Officer LaCoste left the school with Robert Gray in custody. D. Richardson dep. at 66.

4

## Summary Judgment Standard

Summary judgment is appropriate where the pleadings and supporting documents show that "there is no genuine issue as to any material facts and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56©; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Whether a genuine issue of material fact exists is determined by the governing substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). In making this determination, the Court views the facts and draws all reasonable inferences "in the light most favorable to the non-moving party." *Shank v. William R. Hague, Inc.*, 192 F.3d 675, 681 (7th Cir.1999). In a summary judgment proceeding, courts do not make credibility determinations or choose between competing inferences. *Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1041 (7th Cir.1993).

The moving party initially bears the burden of showing that, based on the record, no genuine issue of material fact exists. *Celotex*, 477 U.S. at 323. The moving party can discharge this burden by pointing out to the district court "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. If the moving party sustains its burden, the party opposing the motion "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. To survive a motion for summary judgment, the non-moving party

must show more than a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co, v. Zenith Radio Corp.*, 475 U.S. 574, 596 (1986). The non-moving party must also present sufficient evidence to support each element on which it will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322. Simply relying "upon the mere allegations or denials of the adverse party's pleading" would not constitute sufficient evidence. *Anderson*, 477 U.S. at 248.

Pursuant to Local Rule 56.1, any "fact" that is not properly disputed and supported by evidence is deemed admitted. *Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 920-22 (7th Cir. 1994). The Court is "entitled to expect strict compliance with Rule 56.1." *Ammons v. Aramark Uniform Servs.,* 368 F.3d 809, 817 (7th Cir. 2004). "Local Rule 56.1 requires citations to evidence to support any denials, because if a plaintiff is allowed to proceed onward to trial, she must be able to offer something more than her own speculation to the trier of fact." *Crawford v. Indiana Harbor Belt R. Co.,* No. 04 C 2977, 2005 WL 1243420, at *3 (N.D. Ill. May 23, 2005).

## DISCUSSION

Plaintiff argues that Defendants falsely arrested him in violation of § 1983 and Illinois law. The existence of probable cause is an absolute bar to a § 1983 and a state law claim for

6

false arrest[6]. *Jones v. Webb*, 45 F.3d 178, 183 (7th Cir. 1995); *Meerbrey v. Marshall Field & Co.,* 139 Ill.2d 455, 564 N.E.2d 1222, 1231 (1990). A police officer has probable cause to arrest when "the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." *Beck v. Ohio,* 379 U.S. 89, 91 (1964); *Booker v. Ward,* 94 F.3d 1052, 1057 (7th Cir. 1996). Under both federal and state law, the police may rely upon information from ordinary citizens to establish probable cause for arrest. *See, People v. Bean,* 84 Ill.2d 64, 417 N.E.2d 608, 610 (1981). An officer need not investigate an accused's claim of innocence before effecting an arrest. *Kelley v. Myler,* 149 F.2d 641, 646 (7th Cir. 1998).

Plaintiff argues that Defendants' Motion for Summary Judgment must be denied, because there is a genuine issue of material fact as to whether Defendants had probable cause to arrest him. Plaintiff claims that the facts give rise to the inference that Joseph claimed that he was robbed by a single offender, that Joseph identified Robert Gray as the person who robbed him from the Julian yearbook, and that Mr. Gray was

---

[6] The Court looks to Illinois law to determine whether there was probable cause to arrest Mr. Murdock. *Pourghoraishi v. Flying J, Inc.,* 449 F.3d 751, 761 (7th Cir. 2006).

7

arrested and later admitted robbing Joseph.  Plaintiff further
claims that Joseph never told Officers Richardson and LaCoste
that a second offender took his wallet out of his hand, then took
five dollars out of his wallet, and threw the wallet to the
ground.  Therefore, Plaintiff argues, his arrest was
unreasonable.

The Court agrees that the testimony in this case does not
paint an entirely cohesive picture of precisely what happened
both during and after the robbery of Joseph Raggs.  For example,
while the police report indicates that Joseph told the officers
that one boy took five one-dollar bills from him and that another
then took an additional five dollars from him and threw his
wallet, Joseph later testified that he told the officers that one
boy took five one-dollar bills from him, and that Joseph was
afraid that the robber's two friends were going to jump him, and
that he threw some money at the ground behind him and ran to his
mother's classroom.  Plaintiff argues that Joseph's statements to
the Officers following the incident provide the only reasonable
basis for arresting anyone-- and because there is conflicting
evidence regarding what Joseph told the Officers, summary
judgment must be denied.

The Court disagrees.  While Joseph claims he never told the
Officers that he was robbed by two individuals, Joseph concedes
that he said "that's him" when Officer Richardson and Mr. Jordan

8

were questioning Kevin in the hallway. In fact, Joseph admits

that, when the Officer Richardson was holding Mr. Murdock in the

hallway, he was asked whether Mr. Murdock took his money, and

Joseph said "Yeah." J. Raggs' Dep. at 23. And Joseph's

identification was consistent with Astin Young's statement to Mr.

Jordan that Kevin Murdock was culpable. At best, the evidence

gives rise to the inference that either Joseph was confused when

he initially reported the incident to the Defendant Officers, or

that the Officers misunderstood that only one boy actually robbed

Joseph, while the others merely harassed him for money. See J.

Raggs' Dep. At 29 (acknowledging confusion over what occurred,

explaining that he told the Officers that a second student

followed him, asked him for his money, and that Joseph threw the

money at this student.)

The Court finds that, in light of the other evidence in the

record, the conflicting evidence regarding precisely what Joseph

told the Defendant Officers is not material.     As Judge

Easterbrook explained:

> The sort of inconsistencies to which [Plaintiff] points are
> normal. Eyewitnesses remember things differently. Police
> don't always follow correct procedure . . . .If these were
> sufficient to permit second-guessing and damages, then the
> job of policing would be very risky financially as well as
> physically. Police would respond by disbelieving witnesses
> (or not acting on allegations) lest they end up paying
> damages and the public would suffer as law enforcement
> declined. . . . That's why we have held that the sort of
> inconsistencies and glitches that characterize real
> investigations do not disentitle police to rely on
> eyewitness statements.

*Askew v. City of Chicago,* 440 F.3d 894, 896-97 (7th Cir. 2006).

Mr. Murdock also argues that he told the officers that he did not rob Joseph. But Mr. Jordan testified that, instead of explaining his limited (and apparently noncriminal) role in the incident, Kevin lost all credibility by violently denying any involvement whatsoever – a claim that was contradicted by both Astin Young and Joseph. In Mr. Jordan's opinion, had Kevin remained calm and cooperated with the investigation, he might have been spared the arrest. Regardless, the Officers were well within their rights to arrest Kevin, despite his denial, given Joseph's statements in the school hallway. *Gramenos v. Jewel Co., Inc.,* 797 F.2d 432 (7th Cir. 1986) (noting that an accused's denial does not require the officers to investigate the veracity of the claim before making an arrest.) The Defendant Officers had no reason to doubt the veracity of Joseph's claim that he had been robbed, or his identification of Kevin in the school hallway. *Compare Hebron v. Touhy*, 18 F.3d 421 (7th Cir. 1994) (noting *in dictum* that it may be unreasonable for an officer to arrest an individual where the accuser may harbor a grudge or otherwise be incredible).

Drawing every inference in favor of Mr. Murdock, the evidence demonstrates that Joseph reported that he had been robbed and that more than one individual was involved; that Ms. Raggs wanted all of the boys involved in the incident arrested

(V. Raggs' Dep. at 41); that Astin Young indicated that Kevin
Murdock had robbed Joseph; and that, when Joseph saw Kevin
Murdock in the hallway, he stated "that's him" or words to that
effect. Although Joseph witnessed Mr. Murdock being handcuffed
and removed from the school, he never intervened to stop the
arrest or to explain that Mr. Murdock was merely at the scene and
was not the robber. The fact that Joseph's version of the events
changed slightly after the stress of the situation had subsided,
or even if Officer LaCoste may have misunderstood Joseph, is not
sufficient to send this case to a jury. The discrepancies are
simply not sufficient to render the arrest unreasonable in light
of Joseph's identification of Mr. Murdock in the school hallway.

Having determined that Defendants had probable cause to arrest
Kevin Murdock, the Court need not address Defendants' claim that
they were entitled to immunity. In addition, Plaintiff's claims
of respondeat superior and statutory indemnification against the
City of Chicago must also fail. While the City could be held
liable for respondeat superior pursuant to Plaintiff's state law
false arrest claims, there is no respondeat superior liabilty
under § 1983. See Monell v. Dept of Soc. Serv. Of City of NY, 436
U.S. 658, 691 (1978). Illinois law, however, "requires that
there be a viable claim against the individual defendants for a
claim to lie against the City." Hudson v. Cassidy, 2006 WL
3524420, at *7 (N.D. Ill. Dec.5, 2006). Because the Court has

11

determined that Defendants had probable cause to arrest
Plaintiff, Plaintiff has no viable claim for respondeat superior
or statutory indemnification.

## **CONCLUSION**

The Court appreciates Mr. Murdock's distress over being
arrested for a crime that he did not commit. Neverthless, the
evidence gives rise to only one inference in this case – that
Defendants were reasonable in their belief that they had probable
cause to arrest Mr. Murdock. Therefore, Defendants' Motion for
Summary Judgment is Granted.

Dated: May 10, 2007                    E N T E R:

ARLANDER KEYS
United States Magistrate Judge